Claude Thomas BRONNENBERG,
Appellant,

v.

In re the ESTATE OF Claude
BRONNENBERG,
Appellee.

No. 18A05–9706–CV–223.

Court of Appeals of Indiana.

April 7, 1999.

Rehearing Denied June 7, 1999.

Gary L. Griffiths, Indianapolis, Indiana, Attorney for Appellant.

Robert O. Beymer, Muncie, Indiana, Attorney for Appellee.

## OPINION

GARRARD, Judge

### Case Summary

Claude Thomas Bronnenberg ("Thomas") appeals the denial of his petition to reopen the estate of his father, Claude Bronnenberg ("Claude"). We affirm.

### Issues

Thomas presents four issues which we restate as follows:

I.   Whether Thomas received sufficient notice that the estate claimed ownership of real property in which he held an interest;

II.  Whether the trial court erred in determining that Thomas had waived his right to reopen the estate;

III. Whether property incorrectly listed on an inventory voids a sale of the property; and,

IV.  Whether Thomas forfeited a right in the sale of the real estate at issue.

The estate's former counsel requests attorney fees.

### Facts and Procedural History

A detailed recitation of the facts is necessary for a proper resolution of this case. According to a deed dated January 2, 1975, Russell and Cleo Flesher conveyed and warranted to Thomas and his then-wife, Jewel, an eighty acre tract of land for ten dollars. A separate deed dated the same day states that Thomas and Jewel conveyed and warranted the eighty acres to Claude for one dollar.[1]  In June of 1981, Thomas and Claude

---

1. In a December 1996 affidavit, Jewel, who was no longer Thomas' wife, stated that despite the instrument's language, the separate deed was actually a quit claim deed from Thomas and Jewel to Thomas. She claimed that the confusion arose due to a typographical error.

entered into a "Real Estate Contract" whereby Claude agreed to sell the eighty acre tract of land to Thomas for $92,000.00 to be paid by January 1, 1982. Thomas lived on and farmed the eighty acres.

Claude died on September 15, 1992. The court approved the appointment of Larry Bronnenberg and Patricia Bronnenberg, siblings of Thomas and children of Claude, as co-personal representatives of the estate. Both an original and an amended inventory were filed and listed the estate's personal and real property. The inventories included the eighty acre tract of land with a $52,000.00 asset value.

Thomas owed $210,000.00 on a promissory note to the estate of his deceased parents.[2] Although the personal representatives initially filed suit upon the note, they later petitioned the court to settle the matter by permitting them to enter into an agreement. In the August 25, 1994 order granting the petition, the court stated:

2. That [Thomas] has been in a Chapter 11 bankruptcy, has had severe financial problems and may not be able to pay said [$210,000.00] note even if the co-personal representatives were successful in their suit.

3. That the parties have entered into an agreement whereby the promissory note due from [Thomas] would be discharged and being fully paid and satisfied and the suit against him be dismissed with prejudice.

4. That [Thomas] in exchange for such dismissal and release would execute and deliver to the co-personal representatives his renunciation of his right to inherit under the [estate].

5. That the Court believes that said settlement is full, fair adequate and in the best interest of the estate and the heirs-at-law of said decedent and the same should be approved.

6. That all persons interested in said estate have signed written consents to such settlement and no notice is necessary to said persons.

Record at 89–90. Accordingly, on October 3, 1994, the personal representatives and Thomas executed an agreement which provided, *inter alia:*

4. That after the execution and delivery of [Thomas' renunciations of any right, title or interest in the estates of his parents], [Thomas] shall have no further rights, title or interest in and to the [estates of his parents]. Nothing in this agreement shall effect in any way any other claim, contract agreement or liability existing between [Thomas] and the respective [estates of his parents]. As it is the intention of this settlement and agreement to release [Thomas] from any claim under his promissory note in the sum of Two Hundred Ten Thousand ($210,000.00) Dollars plus interest and cost and the relinquishment of his right to receive or take any property under the [estates of his parents].

5. That *this agreement has no effect and does not in any way change the status, rights or liabilities of any of the parties hereto as to a certain contract for the purchase of real estate existing between [Thomas], as purchaser, and the Estate of Claude Bronnenberg, as seller and that said contract shall remain in full force and effect.*

6. That from and after the execution and delivery of the relinquishment as herein note, *[Thomas] shall not have any further right to notice of the pendency or the proceedings taking place in either of the respective estates.*

7. That the Personal Representatives may proceed with the settlement of the respective estates the same *as if [Thomas] was not an interested party* nor heir or legatee under either of the said estates.

Record at E, F (emphases added). Also on October 3, 1994, in accordance with the above agreement, Thomas filed a "Disclaimer of Intestate Share of the Decedent's Estate." Record at 92.

In a January 1995 petition requesting authority to sell the eighty acre tract of real

2. Effie Bronnenberg, Claude's wife and Thomas' mother, died shortly after Claude's death.

estate, the personal representatives explained:

3. That on the 25th day of June, 1981, the said Claude Bronnenberg sold said real estate on a written conditional sales contract to [Thomas]. . . .

4. That said co-personal representatives are uncertain as to the amount of money due upon said contract, however the purchaser [Thomas] has repeatedly alleged the unpaid balance to be Fifty-two Thousand ($52,000.00) Dollars.

5. That [Thomas] is of questionable financial abilities and has filed bankruptcy not less than three (3) times within the last two (2) years and now has a bankruptcy pending in the United States Bankruptcy Court for the Southern District of Indiana, Indianapolis division under Cause No. 94–09251–RLB–13. That said co-personal representatives do not believe that there is any likelihood that [Thomas] can discharge the indebtedness upon said contract and that if the matter remains in the bankruptcy proceedings that it could take more than five (5) years for them to receive the payment which would unduly extend the period necessary for the administration of this estate.

6. That said co-personal representatives desire to sell said real estate *subject to the contract* as hereinabove identified at and for the sum of Twenty-six Thousand ($26,000.00) Dollars *subject only to the contract as above described and current taxes and the taxes for the year 1994 due and payable in 1995 to be assumed by the purchaser.*

7. That the interest of [Thomas] has been relinquished by the prior determination of this Court and no further notice to [Thomas] concerning matters of this estate is required.

\* \* \*

10. That said co-personal representatives believe that the sale of said real estate would be in the best interest of the heirs, devisees and legatees[.]

Record at 127–28 (emphases added). The court granted the petition, and the property was sold to Janet Herbert who received a personal representative's deed. In June of 1995, the final account and other petitions were filed to conclude the estate.

In February of 1997, Thomas filed a petition to reopen the estate. In an order denying the petition, the court made detailed findings of fact and conclusions of law.

### Discussion and Decision

Our supreme court has set out the standard of review when a trial court makes findings and conclusions on its own motion:

Sua sponte findings control only as to the issues they cover and a general judgment will control as to the issues upon which there are no findings. A general judgment entered with findings will be affirmed if it can be sustained on any legal theory supported by the evidence. When a court has made special findings of fact, an appellate court reviews sufficiency of the evidence using a two-step process. First, it must determine whether the evidence supports the trial court's findings of fact; second, it must determine whether those findings of fact support the trial court's conclusions of law. Findings will only be set aside if they are clearly erroneous. Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference. A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. In order to determine that a finding or conclusion is clearly erroneous, an appellate court's review of the evidence must leave it with the firm conviction that a mistake has been made.

*Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind.1997) (citations and internal quotations omitted); *cf. Mitchell v. Mitchell*, 695 N.E.2d 920, 923–24 (Ind.1998) (holding that where a trial court has made special findings pursuant to a party's request under Trial Rule 52(A), the reviewing court may affirm the judgment on any legal theory supported by the findings).

### I. Notice

■ Thomas asserts that the trial court erred in determining that a copy of letters of administration to a potential heir was suffi-

cient notice that the estate claimed ownership of real property in which the potential heir held an interest. Preliminarily, we point out that the trial court's finding and conclusion on this matter were not quite what Thomas claims them to have been. Rather, the trial court found that the "estate was opened September 17, 1992 and Letters of Administration were issued to the co-personal representatives and [Thomas] was listed as an heir of the decedent and given notice accordingly." Record at 194. The trial court concluded that until Thomas filed his disclaimer, he "had every opportunity, as an heir in receiving notice of the matters in this estate, to have determined that the estate claimed the ownership of the eighty (80) acres. He took no action...." Record at 198. The court further concluded that Thomas was a party and received notices, "and in the exercise of reasonable care should have known that the property which he claimed was being claimed by the estate and was in fact later sold by the estate." Record at 700. The evidence supports these determinations.

It is true that nothing in the letters of administration explicitly stated that the eighty acre tract of land was being claimed by the estate. However, our inquiry does not end there.

The letters of administration notified Thomas that an estate was being opened for Claude and that he was an heir. Both the inventory and the amended inventory were filed with the court and listed the eighty acres as real property of Claude's estate. As public records, the inventories were available for examination. Considering the real estate contract entered into by Thomas and Claude, and the fact that Thomas still owed $52,-000.00 on the contract, Thomas should have been aware that the estate would claim some ownership interest in the eighty acres. If Thomas was unsure, he could easily have checked the inventories. Accordingly, Thomas received sufficient notice.

### II. Waiver of Right to Reopen Estate

■ Thomas contends that trial court erred in determining that he waived his right to reopen the estate. Regarding this issue, the trial court concluded:

5. The statutory provisions for the reopening of an estate under Ind.Code 29–1–17–14 require the petitioner to be a person interested in the estate. Section Ind.Code 29–1–1–24, providing for fraud in a proceeding, provides that any person injured thereby may obtain appropriate relief against the perpetrator of the fraud and Ind.Code 29–1–17–16, providing for equitable remedies, also requires an interested party to be entitled to relief.

6. In this particular case, after [Thomas] executed his Disclaimer; he was no longer an interested party. No matter how much money could be recovered by the estate, [Thomas] could not obtain any interest in it as he already relinquished all his right, title and interest.

7. It is the opinion of this Court that since he is not an interested party, [Thomas] is not entitled to file or obtain relief under his Petition to Reopen the Estate.

8. The provisions of Ind.Code 29–1–17–16 state that the provisions of Ind.Code 29–1–1–21 and Ind.Code 29–1–17–13 which limit the right to raise the question to one (1) year is extended only to interested persons.

9. In this particular case, [Thomas] was a party and received notices, and in the exercise of reasonable care should have known that the property which he claimed was being claimed by the estate and was in fact later sold by the estate.

Record at 699–700.

The relevant statute provides:

If, after an estate has been settled and the personal representative discharged, other property of the state shall be discovered, or if it shall appear that any necessary act remains unperformed on the part of the personal representative, or for any other proper cause, the court, upon the petition of ... any person interested in the estate ... may order that said estate by reopened.

IND.CODE § 29–1–17–14(a). In view of the language of the October 3, 1994 agreement and the disclaimer, both of which were signed by Thomas, the trial court correctly concluded that Thomas was not an interested

party for purposes of attempting to reopen the estate. Thomas' redress, if any, lies not in an action to reopen the estate, but in the separate lawsuit involving Herbert, the woman who purchased the eighty acres from the estate subject to the real estate contract with Thomas.

### III. Incorrect Listing on Inventory

Thomas argues that the judicial sale of the eighty acres to Herbert should be set aside as null and void because of what he terms "irregularities in the inventory." Appellant's brief at 14. In particular, Thomas asserts that the personal representatives should have employed a disinterested appraiser to assist in ascertaining the fair market value of the eighty acres as of the date of Claude's death rather than assigning it the $52,000.00 value. He also asserts that the inventory is deficient since it did not list the real estate contract under the subsection regarding mortgages. Thomas notes that the promissory note for the $210,000.00 was omitted from the inventory as well.

■ Regarding irregularities, the probate code provides: "No proceedings for sale, mortgage, lease, exchange or conveyance by a personal representative of property belonging to the estate shall be subject to collateral attack on account of any irregularity in the proceedings if the court which ordered the same had jurisdiction of the estate." IND. CODE § 29–1–15–7. The record contains evidence that the eighty acres belonged to the estate. In addition, Thomas did not challenge the trial court's jurisdiction over the estate. Thus, the aforementioned code section applies to bar Thomas' petition to reopen the estate regardless of any irregularity in the inventory.

### IV. No Right Forfeited

■ Finally, Thomas contends that the sale of the eighty acres amounted to a forfeiture of his accrued equity in the land. The trial court concluded that the personal representative's deed states that it is subject to the 1981 contract of sale entered into by Claude and Thomas. The trial court also concluded that the rights of Thomas and Herbert should be litigated in the court in which Herbert filed suit, not in the court which handled Claude's estate.

Given the facts in the record, we fail to see how Thomas' rights could have been forfeited or altered. After the estate sold the eighty acres to Herbert, Thomas was in the same position as when Claude had owned the land. Specifically, Thomas retained whatever rights he had to pay off the contract and keep the land. Further, the terms of the original real estate contract stated:

> It being agreed and understood that any acceptance by first party [Claude—until the sale to Herbert] of payments after the same mature hereunder shall not operate as an extension of time for other payments hereunder, and shall in no manner alter the strict terms hereof.

> \* \* \*

> Provided always that these presents are upon the condition that in case of the failure of the said party of the second part [Thomas], his heirs, executors, administrators or assigns in the performance of all or either of the covenants and promises on his part to be performed and fulfilled, the said party of the first part, their successors, assigns or legal representatives, shall have the right to declare this contract forfeited and void, and thereupon to recover all the installments due and unpaid, together with interest thereon, as rent for the use and occupation of said real estate, and to take possession thereof, and to regard the person, or persons, in possession on such termination of the contract, as tenants holding over without permission if that should be necessary to gain prompt possession of said real estate and to recover all damages sustained by such holding over without permission or by means of any waste committed or suffered on said real estate, and thereupon all interest of said second party in and to the above described premises shall cease and terminate, and said first party shall retain all the money which may have been paid by second party, as well as any improvements or additions to the real estate, as rent for the use of said property by said second party until the time of such forfeiture.

Record at 179. Herbert purchased the eighty acres subject to the real estate contract, thus she was entitled to the rights of the "first party." Therefore, any negative ramifications that Herbert's suit might cause Thomas should not come as a surprise to him. Thomas had to know that the "first party" could utilize the remedies permitted in the contract.

### Attorney Fees

The estate's former counsel requests that he be awarded attorney fees, court costs, and expenses which have been incurred by the personal representatives "in defending this action, as well as defending two (2) petitions to reopen the estate as well as this appeal." Appellee's brief at 14.

Regarding attorney's fees, Indiana Code Section 34–1–32–1(b) states:

In any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if it finds that either party:

(1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;

(2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or

(3) litigated the action in bad faith.

As for awarding sanctions at the appellate level, the decision is permissive. *See* Ind. Appellate Rule 15(G); *Yin v. Society Nat'l Bank Indiana,* 665 N.E.2d 58, 65 (Ind.Ct. App.1996) (noting that an award of damages under Appellate Rule 15(G) is discretionary and may be ordered when an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay), *trans. denied.* In exercising our discretionary power to award damages on appeal, we use extreme restraint. *Orr v. Turco Mfg. Co., Inc.,* 512 N.E.2d 151, 152 (Ind. 1987).

It does not appear that counsel requested fees at the trial court level. Moreover, counsel did not cite any specific authority to support his request for attorney fees. Even overlooking these problems, we are not inclined to award fees. While we sympathize with counsel's concerns, this case does not reach the level necessary to impose fees.

Affirmed.

BAKER, J. and ROBB, J. concur.