In the Matter of the Unsupervised ESTATE OF Robert G. McNABB, a/k/a R.G. McNabb, deceased.

Fredric Geoffrey McNabb, Appellant–Petitioner,

v.

Ralph E. Dennis, Jr., Appellee– Respondent.

No. 18A05–0007–CV–300.

Court of Appeals of Indiana.

March 19, 2001.

Gregory B. Smith, Smith & Smith Law Office, Muncie, IN, Attorney for Appellant.

Thomas R. Malapit, Jr., Dennis, Wenger, & Abrell, P.C., Muncie, IN, Attorney for Appellee.

## OPINION

KIRSCH, Judge

Fredric Geoffrey McNabb ("McNabb") appeals the grant of summary judgment in favor of Ralph E. Dennis, Jr. ("Dennis") on McNabb's petition to reopen his father's estate. McNabb raises three issues, of which we find the following to be dispositive: whether the trial court properly granted summary judgment on the basis that IC 29–1–7.5–7 barred McNabb's petition.

We affirm.[1]

1. McNabb petitioned this court for oral argument. However, after examining the Record and briefs, we conclude that an oral argument is not necessary.

2. Robert died leaving a will; however, Robert's estate was administered as an intestate estate because Liberty did not open an estate

## FACTS AND PROCEDURAL HISTORY

McNabb is the son of Robert G. McNabb, a/k/a R.G. McNabb ("Robert") and Liberty Buveada McNabb ("Liberty"). Robert died on August 21, 1988. On January 21, 1993, Liberty filed a petition in the Delaware Circuit Court for unsupervised administration of Robert's estate, and requested that she be appointed personal representative of the estate.[2] McNabb consented to the petition, which listed McNabb and Liberty as the only two heirs of the estate. Attorney Dennis represented Liberty in her capacity as personal representative of Robert's estate. Administration of the estate proceeded in unsupervised fashion. On December 20, 1994, Liberty filed a verified closing statement to close the estate upon completion of administration.

Before closing Robert's estate, Liberty executed on February 22, 1994, a revocable trust agreement, later amended, in which she as settlor created a trust during her lifetime. Upon her death, her trustee was to divide the trust assets into two separate trusts for the benefit of McNabb and another individual. Liberty died on February 27, 1996. Her supervised estate closed in April 1999.

On October 18, 1999, McNabb filed a petition to reopen Robert's estate on the basis that Liberty, as personal representative of Robert's estate, failed to perform a required act of administration, namely, distribution to him of $146,061.92 from Robert's estate. McNabb expressed his belief that Liberty had transferred substantially all her assets, including his distributive share of his father's estate, into the trust that she created prior to the closing of Robert's estate. McNabb sought the ap-

until more than four years after his death, and thus his will could not be probated. *See* IC 29–1–7–15.1(d) (if letters testamentary or of administration are not taken out within three years of decedent's death, will shall not be probated).

pointment of an administrator de bonis non to "complete the administration" of Robert's estate. *Record* at 42–43.

The petition was set for hearing on November 8, 1999. The clerk issued notice of the hearing to Dennis, who as a self-styled "respondent," sought and received a continuance of the hearing and additional time to file a response to the petition. On November 18, 1999, Dennis filed a motion for summary judgment on McNabb's petition to reopen Robert's estate. McNabb filed no response or designation to the motion. Upon Dennis's request, the court abated discovery in the case until it decided McNabb's pending motion to strike and motion for sanctions, which asserted that Dennis had no standing to oppose the petition.

On April 27, 2000, the trial court entered findings of fact and conclusions of law and order granting Dennis's motion for summary judgment on the basis that the estate was entitled to judgment as a matter of law because McNabb's claims were barred under IC 29–1–7.5–7.[3]

After the denial of his motion to correct errors, McNabb now appeals.

## DISCUSSION AND DECISION

Where, as here, a trial court makes findings and conclusions on its own motion, our supreme court has set out the standard of review:

> " 'Sua sponte findings control only as to the issues they cover and a general judgment will control as to the issues upon which there are no findings. A general judgment entered with findings will be affirmed if it can be sustained on any legal theory supported by the evidence. When a court has made special findings of fact, an appellate court reviews sufficiency of the evidence using a two-step process. First, it must determine whether the evidence supports the trial court's findings of fact; second, it must determine whether those findings of fact support the trial court's conclusions of law. Findings will only be set aside if they are clearly erroneous. Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference. A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. In order to determine that a finding or conclusion is clearly erroneous, an appellate court's review of the evidence must leave it with the firm conviction that a mistake has been made.' "

*Bronnenberg v. Estate of Bronnenberg*, 709 N.E.2d 330, 333 (Ind.Ct.App.1999) (quoting *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind.1997)).

Here, we focus on the trial court's decision to grant summary judgment on the basis that IC 29–1–7.5–7 barred McNabb's petition. Summary judgment is appropriate only when properly designated materials show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Estate of Goodwin v. Goodwin*, 721 N.E.2d 886, 888–89 (Ind.Ct.App.1999). When reviewing a motion for summary judgment, we apply the same standard as the trial court, and we resolve any doubt as to a fact, or an inference to be drawn therefrom, in favor of the party opposing summary judgment. *Id.* On appeal, the appellant bears the burden of proving that the trial court erred in determining that there

---

**3.** The court further found that the petition was untimely on its face and should be denied on that basis. Because we affirm the trial court's grant of summary judgment on other grounds, we do not reach the trial court's decision concerning untimeliness of the petition. However, we note that IC 29–1–17–14 does not limit the time within which an administrator de bonis non may be appointed. *See also* Debra A. Falender, 1 Henry's Indiana Probate Practice § 807, at 352 (8th ed.1989) (in the absence of any statute of limitation upon the subject, the general rule is that as long as there are assets remaining unadministered such an administrator may be appointed).

are no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law. *Id.* at 889. Where there are no disputed facts, the motion is treated as a question of law, and we review the matter de novo. *Id.*

Here, McNabb filed no response or opposing affidavits to Dennis's motion for summary judgment. However, summary judgment shall not be granted as of course because the opposing party fails to offer opposing affidavits or evidence, but the court shall make its determination from the evidentiary matter designated to the court. Ind. Trial Rule 56(C).

■ Eleven years after his father's death, and three years after his mother's death, McNabb sought to reopen his father's estate on the grounds that his mother, as personal representative of his father's estate, failed to distribute his intestate share to him.[4] McNabb petitioned the court under IC 29-1-17-14, which provides in pertinent part:

"If, after an estate has been settled and the personal representative discharged, ... it shall appear that any necessary act remains unperformed on the part of the personal representative, or for any other proper cause, the court, upon the petition of ... any person interested in the estate and, without notice or upon such notice as it may direct, may order that said estate be reopened. It may reappoint the personal representative or appoint another personal representative to administer such property or perform such act as may be deemed necessary."

IC 29-1-17-14(a). McNabb asserted that necessary acts of administration remained unperformed, namely, distribution to him of $146,061.92 "and/or, if necessary, the recovery of such funds from the trustee of said revocable trust." *Record* at 42. The

failure to distribute to McNabb appears undisputed. *See Appellee's Brief* at 20.

■ IC 29-1-17-14 was intended to reach, for the benefit of creditors, legatees, and distributees, any assets which had escaped the former administration. HENRY's INDIANA PROBATE LAW & PRACTICE § 1209, at 520. McNabb's petition sought appointment of an administrator de bonis non to complete administration of Robert's estate. The term "de bonis non" strictly means "of goods not administered." *Id.* § 807, at 351 & § 1209, at 519. Thus, an administrator de bonis non, appointed after the reopening of an estate, can exercise authority only over that portion of that estate not previously administered upon. *Id.* § 1209, at 519.

Dennis's motion for summary judgment, supporting memorandum and affidavit aver, quite simply, that: Robert died on August 21, 1988; Liberty was appointed personal representative of his estate in January 1993; she executed a revocable trust agreement in February 1994; Liberty filed a closing statement in Robert's estate in December 1994; Liberty died in February 1996; her supervised estate was closed in April 1999; and that IC 29-1-7.5-7 bars McNabb's request to reopen his father's closed estate. We agree.

IC 29-1-7.5-7 provides in relevant part: "Unless otherwise barred, ... the right of any heir or devisee ... to recover property improperly distributed or the value thereof from any distributee is forever barred at the later of (a) three (3) years after the decedent's death, or (b) *one (1) year after the closing statement is filed.*"

IC 29-1-7.5-7 (emphasis added).[5]

In form, McNabb's petition seeks to reopen his father's estate on the basis that some acts remain unperformed. However,

---

4. The Record does not disclose at what point in time McNabb discovered that he was owed over $146,000, other than he learned of the omission some time after his mother filed her closing statement in Robert's estate in December 1994.

5. We note that the three-year limitation is not applicable to the facts of this case, because no estate was opened until more than four years after decedent's death.

the substance of the petition seeks to recover McNabb's distributive share, which he suspects his mother retained and transferred into her trust prior to closing her husband's estate. "The form of a petition [to reopen] should not govern its substance." HENRY'S INDIANA PROBATE LAW & PRACTICE § 807, at 356. Here, there is no allegation that undistributed assets, newly discovered or otherwise, remain in Robert's estate, or that the inventory omitted some estate property; accordingly, we discern no unadministered assets.[6] Rather, McNabb seeks to "recover from a distributee" (the trustee of his mother's trust) almost five years after Liberty filed her closing statement in Robert's estate. IC 29–1–7.5–7 expressly precludes him from doing so.

■ McNabb asserts that because Liberty's closing statement was deficient and because he did not receive service of the closing statement IC 29–1–7.5–7 should not bar his petition. His argument is premised upon IC 29–1–7.5–4, which permits a personal representative to close an unsupervised estate by filing a verified closing statement stating that she has completed her duties, including distribution of all the assets of the estate to the persons entitled to receive the assets, and has sent a copy to all distributees. IC 29–1–7.5–4(a)(5)(6). McNabb directs us to Liberty's failure to recite in her closing statement the requisite statement that she had distributed all of the assets of the estate to the persons entitled to receive the assets and to his affidavit that he did not receive a copy of the closing statement.

We hold that IC 29–1–7.5–6 and IC 29–1–7.5–7 are statutes of repose that operate as absolute bars to claimants, heirs and devisees after the applicable time periods have expired. By their terms they bar, not merely the remedy, but the right of recovery.[7] These bars operate notwithstanding deficiencies in the closing statement or lack of notice.

An heir or devisee who consents to unsupervised administration does so at his peril. By his consent—freely and knowingly given—he waives his right to court supervision of the administration of the estate. By such waiver, an heir consenting to unsupervised administration avoids court intrusion into the estate but gives up the protections flowing from such intrusion. Therefore, it is incumbent upon such heirs and devisees to take such action as may be appropriate to monitor the progress of estate administration. If, at any time, the heir or devisee has reason to believe that administration should be supervised, he has the right to petition the court for supervised administration. *See* IC 29–1–7.5–2(d).

Here, McNabb consented to the unsupervised administration of his father's estate. In his consent, he acknowledged that he understood that the court would not be overseeing the activities of the personal representative in any way. Notwithstanding the clear language of this consent, the Record fails to show any instance in which he took any action whatsoever to monitor the administration of his father's estate either before or after the filing of the closing statement. He had the right to challenge the closing statement within three months of its filing. He did not do so, and his right to do so thereafter was barred by IC 29–1–7.5–4.5. In addition, he had the right to make a claim against the personal representative within three

---

6. We observe that the Indiana Inheritance Tax Return and the Order Determining Inheritance Tax Due include McNabb's $146,061.92 interest, thereby evidencing that these funds were not omitted or excluded from the administration of Robert's estate.

7. IC 29–1–7.5–6 provides in operative part: "[A]ll claims ... *are barred* unless a proceed-

ing to assert the same is commenced within three (3) months after the filing of the closing statement. *The rights thus barred....*" Similarly, IC 29–1–7.5–7 provides in operative part: "*[T]he right* of any heir or devisee ... to recover property improperly distributed ... *is forever barred....*" (Emphasis added).

months of the closing statement. He did not do so, and his right to do so thereafter was barred by IC 29–1–7.5–6. Finally, he had the right under IC 29–1–7.5–7 to seek the recovery of property improperly distributed for the period of one year after the closing statement. He took no action, and, once again his right to do so thereafter was barred by the statute.

IC 29–1–7.5–6 provides an exception to the three month bar and provides in relevant part: "The rights thus barred do not include rights to recover from a personal representative for fraud, misrepresentation, or inadequate disclosure related to the settlement of the decedent's estate." Thus, the deficiency of the closing statement and Liberty's failure to serve McNabb, if true, might have subjected Liberty to liability as personal representative for "fraud, misrepresentation or inadequate disclosure." *See* IC 29–1–7.5–6; HENRY'S INDIANA PROBATE LAW & PRACTICE § 704, at 296–97 (IC 29–1–7.5–6 indicates that personal representative is liable if he knows of an outstanding claim but fails to send a copy of the closing statement to the claimant) & at 297 n. 14 (failure to send a copy of the closing statement to known claimants and creditors would seem to be "inadequate disclosure related to settlement of decedent's estate," referred to in the last sentence of IC 29–1–7.5–6). Such an action would likely be governed by the statute of limitations applicable to fraud, misrepresentation and inadequate disclosure claims. HENRY'S INDIANA PROBATE LAW & PRACTICE § 704, at 296 n. 13 (in actions against personal representative based on fraud, misrepresentation or inadequate disclosure, the most appropriate statute of limitations appears to be six-year statute applicable to actions for relief against frauds). To the extent that he believed that he had a claim to recover from Liberty for fraud, misrepresentation or inadequate disclosure relating to the settlement of his father's estate, McNabb could have brought an action against Liberty during her lifetime or filed a claim against her

estate after her death. Again, the Record fails to show that he took any such action.

Affirmed.

NAJAM, J., and VAIDIK, J., concur.